W. J. DANIEL, APPELLANT, VS. JAMES R. TAYLOR ET ALS., APPELLEES.

1. A tax deed executed by the clerk of the Circuit Court, he signing it: "Frank Phillips, County Clerk," and the concluding clause of the deed describing him as county clerk of the county, and the deed being sealed with the seal of the Circuit Court of the county, is in substantial compliance with the requirements of Section 60 of the general revenue act of 1874, Chapter 1976, as to the signing and sealing of tax deeds by the county clerk.

2. An assessment of land, under the general revenue act of 1874, Chapter 1976 laws, as unknown, such land being occupied at the time, is void. The assessment should have been in the name of the owner or occupant.

3. The record in the clerk's office of the advertisement of a sale of lands under Section 50 of the general revenue act of 1874, Chapter 1976, is admissible as evidence to show that land claimed under a tax deed as sold at such sale was not advertised, when the land is not included in such record.

4. The omission to advertise land for sale for taxes as required by a statute is not a mere irregularity, but is a vital defect, and the validity of all subsequent proceedings depends upon at least a substantial compliance with such statutory requirement.

5. The *prima facie* evidence of regularity of proceedings as to the assessment and the advertisement or notice of sale which a tax deed is made by Section 60 of the tax act of 1874, is overcome by a tax roll showing a void assessment of the land, and a record, made under Section 50, of the advertisement of lands to be sold on the day on which the land is stated in the deed to have been sold, which does not include the land described in the deed.

6. A tax sale took place February 4th, 1878, on a tax assessment of 1877, under the revenue act of 1874, which assessment was void because not made in the name of the owner or occupant of the land, and the tax deed was executed March 8th, 1879, and recorded on March 12th, 1884. The party owning the land from 1862 to her death, died in December, 1884, in possession of the land. The tax purchaser, R., was never in possession. M. bought the land and obtained sheriff's deed thereto on August 4th, 1884, under execution sale on judgments rendered July 3rd, 1883, against R. M. did not have possession during the life of the owner. During such last illness K., a son and heir of the owner, told M. that his tax title was good, and agreed to rent the land from M. After the owner's death K. continued to live on the land and remained in possession until the Fall of 1886, having rented the land from M. in January, 1885, after the owner's death, at which time also M. agreed by bond for title to sell K. the land for $40, payable in November, 1885. On March 2nd, 1885, C. G. C. obtained judgment against K., and on June 4th, 1888, the land was sold, as K's. property, under execution issued on such judgment, to D. In November, 1885, M. conveyed the land to the wife of K., and the only natural conclusion justified by the evidence was that the purpose of the conveyance to the wife was to defeat K's creditors. *Held,* (a) that the tax sale conveyed no title to R., and the sale of the land as the property of R. no title to M.; (b) that the title of D. was superior to that of Mrs. K.

Appeal from the Circuit Court for Jackson county.

STATEMENT.

This is an action of ejectment instituted by the appellant against the appellees, James R. Taylor, Cofield B. King and his wife, Mary King, February 2nd, 1889, to recover possession of the S. W. ¼ of the N. W. ¼ of

section 4, T. 4 R. 11, N. and W., situated in Jackson county, and containing about forty acres.

The plaintiff to maintain his case proved title from the United States, by patent and mesne conveyance, in Louisa C. King, wife of Henry C. King, on January 2nd, 1862; and that on March 2nd, 1885, the Chesapeake Guano Company recovered judgment in Jackson Circuit Court against Cofield B. King for $118.40 and costs, in an action in which the praecipe was filed January 12th, 1885, and the writ is dated the same day and served on the 23rd of the same month; and that on June 4th, 1888, the land in controversy was sold to plaintiff under an execution issued on such judgment, levied upon the land in dispute as the property of Cofield B. King, and was conveyed by the sheriff to such purchaser on the same day. One Thomas G. Dickson, testified, on November 18th, 1889, in behalf of plaintiff that he was familiar with the land, and Mrs. L. C. King, that she died in January, 1885, leaving surviving her a son, Cofield B. King, and a daughter, Lizzie, witness' wife, and her husband, J. B. Gilbert, she having married again. That she (Mrs. Gilbert) was living on these lands at the time of her death, and afterwards her son, Cofield B. King, continued to live upon and cultivate the same, and was in possession thereof during the year 1885, and in 1886 until the Fall of the year, when he moved from the place some miles away. On cross-examination he stated that C. B. King rented the land in controversy from A. McNealy in 1885. That on the division of the estate of Mrs. Gilbert, witness and J. B. Gilbert gave to C. B. King a mule for his interest in the estate; and witness for his wife and Gilbert, took one forty each of the land, King taking a mule. That they knew at that time that McNealy claimed the land in

question by purchase, and that King said he could buy it from McNealy.    Here there was read in evidence an instrument under seal executed by J. B. Gilbert, C. B. King and Mary F. King, dated December 26th, 1885, which purports to relinquish unto T. G. and Lizzie Dickson all their right, title and claim of the former parties, they "being heirs of said estate," in the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of the above stated section of land belonging to the estate of Mrs. L. C. Gilbert, deceased.

Here the plaintiff rested, and the defendants offered in evidence a certain tax deed from the State, purporting to convey the land to one J. N. Richardson, and bearing date March 8th, 1879, and reciting that J. W. Calloway, collector of revenue of the county of Jackson, sold the land at public auction on February 4th, 1878, at Marianna in said county, for the non-payment of taxes assessed and levied thereon for the year 1877, and remaining unpaid on the day of sale, together with the costs and charges, to J. N. Richardson for the sum of $6.66, which sum Richardson had paid.    The deed is signed "Frank Phillips, County Clerk," and purports to have been executed in the presence of two subscribing witnesses, and is sealed win the seal of the Circuit Court of that county.    The concluding clause of the deed also describes the named officer executing it as "county clerk of Jackson county," and states that he has subscribed his "name officially and affixed the seal of the county court of the said county of Jackson, at Marianna, in said county of Jackson."    The deed was filed for record March 11th, 1884, and recorded the next day, proof of its execution having been made before the clerk on the former day by one of the subscribing witnesses.    His affidavit states that he "saw Frank Phillips, clerk of

the Circuit Court, sign and seal the foregoing, and for the uses and purposes therein expressed, and that he and Samuel J. Erwin signed the same as witnesses." To the admission of this deed the plaintiff objected: because it was not executed under the seal of the county court as required by law, but under the seal of the Circuit Court; and, 2nd, because it appeared by the affidavit proving it for record that it was executed by the clerk of the Circuit Court; and because it was never legally executed. The objections were overruled, and due exception taken and the deed read in evidence.

The bill of exceptions then states that the defendants read in evidence judgments from the Circuit Court of Jackson county, Florida, against James N. Richardson, one in favor of Richardson, Mason & Co., one in favor of J. A. Lewis & Co., one in favor of Goodall, McLester & Co., one in favor of Brown & Farrell, and one in favor of A. Mohr, Agent. The judgments appear to have been rendered July 2nd, 1883, and provide for a stay of execution until November 1st following. Defendants then offered in evidence certain *fi. fas.*, dated the day last mentioned, in favor of J. A. Lewis & Co., Brown & Farrell, Goodall, McLester & Co., A. Mohr, Agent, and McKenzie & Co., respectively. On each of these executions there is endorsed a levy by the sheriff on the land in controversy as the property of Richardson, and a transfer of the writ to Adam McNealy with power to collect the same; the transfer of the Lewis & Co. execution bearing date January 16th, 1884; that of Brown & Farrell, November 26th, 1883; that of A. Mohr, Agent, December 13th, 1883; that of McKenzie & Co., January 16th, 1884, and that of Goodall, McLester & Co. the same day. The admission of these writs of *fi. fa.* in evi-

dence was objected to because they "showed only a levy upon the lands contained in the sheriff's endorsement, and did not by said return show a sale and a purchase by Adam McNealy." The objection was overruled and the executions read in evidence, an exception being noted.

The defendants then offered in evidence an instrument purporting to be a deed from Andrew Scott, sheriff of Jackson county, dated August 4th, 1884, conveying to Adam McNealy the above and other lands levied on "by virtue of the following executions issued from the Circuit Court of Jackson county, Florida, against James N. Richardson, to-wit: one in favor of Richardson, Mason & Co., one in favor of J. A. Lewis & Co., one in favor of Goodall, McLester & Co., one in favor of McKenzie & Co., one in favor of Brown & Farrell, and one in favor of A. Mohr, Agent; such deed also reciting the advertisement of the property and its sale on August 4th, 1884, at public outcry to McNealy. Plaintiff objected to the admission of this instrument because it did not identify the executions and judgments read in evidence, nor show the date, amount, and "from what court the judgments supporting the executions mentioned in the deed were issued." The objections were overruled and the deed admitted, exception being duly taken and noted.

Defendants then offered a deed from Adam McNealy and wife conveying the land in dispute to Mary F. King; the same bearing date November 30th, 1885, and recorded November 6th, 1889. The admission of this deed was objected to on the ground that "though executed in 1885, it was never recorded until November, 1889, and consequently was never brought to the knowledge of the plaintiff until after suit brought."

The objection was overruled and the deed read to to the jury, and exception was duly taken and noted.

Here the testimony referred to in the opinion was adduced and then the plaintiff placed in evidence the Jackson county tax roll of 1877. On page 118 of this roll the last name under the head: "Names of Tax-payers," is that of James Yates. The intervening page to page 119 is blank. Page 120 has on its first line under the head: "Names of Tax-payers," the word "Unknown." Opposite this word on the same line, and on all subsequent lines under the heading: "Description of land," are descriptions of land by section and parts of section, township and range, down to the third line of page 127, on which there seems to have been originally the following entry: N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, S. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, section 4, T. 4, R. 11, 120 acres. As the book now stands, a line is drawn through the letters and figures N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, and through S. $\frac{1}{4}$, and S. W. $\frac{1}{4}$ is written above the stated S. $\frac{1}{2}$.

The plaintiff introduced also the advertisement of of the collector of sale of lands in Jackson county for taxes of 1877, on February 4th, 1878, recorded January 31st, 1878, in Book H, Record of Deeds of said county. The only part of section 4, T. 4, R. 11, appearing in this advertisement is the S. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$.

Hereupon the plaintiff moved to strike from the evidence the stated tax deed, for the reason that it was null and void and conveyed no title, because the evidence in rebuttal established that the tax sale was a nullity, the land was never legally assessed, nor legally advertised and sold, that the notice of sale and proof of advertisement showed the sale to

be a nullity, and because the deed had never been properly and legally recorded. The motion was denied and plaintiff excepted.

*Francis B. Carter* for Appellant.

*W. O. Butler* for Appellees.

RANEY, C. J., (after stating the facts):

The first and seventh assignments of error, and those involving instructions given the jury, and instructions asked but refused, will be considered together. The first and seventh assignments are as follows: 1st. That the court erred in permitting the tax deed to J. N. Richardson to be read in evidence over plaintiff's objection. 7th. That the court erred in refusing plaintiff's motion to strike this deed from the evidence. The instructions referred to need not be set out.

The objections urged in the trial court under the first assignment were: 1st. That the deed was not executed under the seal of the county court, but under that of the Circuit Court; 2nd. Because it appeared by the affidavit proving it for record that it was executed by the clerk of the Circuit Court; and, 3rd. Because it was never legally executed. The motion referred to in the seventh assignment was after the introduction by the plaintiff of his evidence in rebuttal, including the Jackson county tax-roll of 1877, and the advertisement of tax sales made February 4th, 1878, of which roll and advertisement there is an explanation in the statement preceding this opinion. The grounds of this motion were: That the deed was null and void and conveyed no title; the land was never legally assessed, nor legally advertised and sold; that

the notice of sale and proof of advertisement showed the sale to be a nullity; and that the deed had never been properly recorded.

It is unnecessary to review what has been heretofore said by this court as to the clerk of the Circuit Court being the county clerk, within the meaning of the latter expression as used in the revenue laws passed under the Constitution of 1868; which Constitution, Section 17 of Art. VI, provided for a "clerk of the Circuit Court who shall also be clerk of the county court." Sams vs. King, 18 Fla., 558; Stockton vs. Powell, 29 Fla., 1, 10 South. Rep., 688; Brown vs. Castellaw, 33 Fla., 204, 14 South. Rep., 822. In our judgment the cases just named are conclusive of the objection made to the introduction of the deed. In Sams vs. King the tax deed was executed, under the general revenue law of 1874, the statute now under consideration, by the clerk of the Circuit Court, he describing himself as such and affixing the Circut Court seal, and the objection urged to the deed covered both the use of that seal and the officer's acting and signing as such clerk, the contention urged here being, as shown by the files, that the law required the use of the seal of the county court, and that he should have acted and signed as clerk of the latter court; but the deed was held valid, and our understanding of the decision is that it was intended to cover the entire objection and hold the deed valid against it and as the exclusive official act of the clerk of the Circuit Court.

The fact that the clerk in executing the deed now before us has described himself as "county clerk," and has in the concluding clause defined the seal used as that of the "county court," when he has used the seal of the Circuit Court, are immaterial irregularities; and the deed must be held a substantial compliance

with the provisions of Section 60 of the general revenue act of 1874, Chapter 1976, notwithstanding what is said there as to the county clerk and the seal of the county court. The expression "county clerk," as used in the statute, or in any official act under it, must be held to mean the same as clerk of the Circuit Court, and the use of the seal of the Circuit Court can not be regarded otherwise than as a substantial compliance with the prescribed form of deed without disturbing a rule of property.

As to the motion to strike the tax deed from the evidence, it is urged in behalf of the appellant, the movant, that the assessment was void. The effect of the tax roll is to show that the land was assessed as "unknown." The revenue statute referred to provides: "All lands shall be assessed in the county  *  *  in which the same shall be, and every person shall be assessed in the  *  *  county  *  *  in which he resides when the assessment is made, for all lands then owned by him within such county  *  *  ; but lands owned by one person and occupied by another may be assessed in the name of the owner or occupant, and lands not occupied or cultivated may be assessed as non-resident."—Section 6. "Unoccupied lands, if the owner is unknown, may be assessed as such without inserting the name of any person."—Section 7. The ownership of the land during the year 1877 was in Mrs. Louisa C. King and J. M. Barnes occupied it; and this being so the assessment should have been made in the name of either such owner or such occupant. The assessment was illegal and void. L'Engle vs. F. C. & W. R. R. Co., 21 Fla., 353; L'Engle vs. Wilson, *Ib.*, 461; Brown vs. Castellaw, 33 Fla., 204, 14 South. Rep., 822.

The second ground of this motion is founded on the record of the advertisement made by the collector of lands for sale for taxes. The fiftieth section of the statute, Chapter 1976, after providing for the sale of land for taxes and for the publication of a notice of sale, and the form of such notice, enacts that the publishers, proprietors or foreman of any newspaper publishing any such notice shall forward a copy of each number of his paper, containing such notice, to the collector of revenue and clerk of the county, by mail, and shall make an affidavit setting forth a copy of such notice, with the date of the first publication thereof and the number of insertions, sworn to and subscribed before some officer authorized to administer oaths in the county in which said newspaper is published, and shall send such affidavit to the county clerk of the county where such land is situated, who shall record the same among the records of his office, and after such recording deliver it to the collector of revenue. There was no objection to the admission of the record referred to, nor do we perceive any defects that are fatal to its use for the purpose of the plaintiff, which purpose was to show that the land in controversy was never advertised for sale. This land does not appear in such record of the advertisement, and we think it was legal evidence that the land was never advertised for sale. The statutory requirement (sec. 50 *supra*) was that the advertisement should be "published in the manner provided by law for legal advertisements, and shall be published once in each week for four successive weeks." "The manner provided by law for legal advertisements" includes publication in a newspaper published in the county. McClellan's Digest, p. 102, Section 1; p. 522, Section 11. The omission of notice of the sale is not a mere irregularity, but a fatal defect,

the validity of all subsequent proceedings depending
upon a substantial compliance with the law in this
regard; and the provision of law as to it must be com-
plied with at least substantially, if not strictly.   Black.
on Tax Titles (1st ed.), Section 78; *Ibid* (2nd ed.),
Sections 205, 210; Blackwell on Tax Titles (5th ed.),
Sections 396, 398, 413; Cooley on Taxation, pp. 482-
487.   The notice required by law is jurisdictional.
This, says the last author cited, is one of the most im-
portant of all the safeguards which has been deemed
necessary to protect the interests of parties taxed, and
nothing can be a substitute for it or excuse the failure
to give it; and being a prerequisite to the officer's
authority, the fact that in the particular case it can be
shown that the party concerned was fully aware of the
proceedings, will be of no avail in supporting them;
and mere informalities or unimportant variances in an
attempt to comply with the law may not be fatal, but
variance in substance can not be overlooked.   In Scales.
vs. Alvis, 12 Ala., 617, 46 Am. Dec., 269, it was held:
even that consent of the land owner to a defective pub
lication of notice would not bind him as he could not
in that manner confer authority upon the officer of the
law, nor could he pass title to his freehold by a mere
waiver.   Blackwell, Section 451.

The *prima facie* evidence of regularity of proceed-
ings as to the assessment and the advertisement or
notice of sale which the deed is made by Section 60 of
the tax act of 1874 (Sams vs. King, *supra*), is over-
come by the above tax-roll and record of the adver-
tisement or notice; but it is contended that appellant,
is precluded from setting up any such defects by the
provisions of the sixty-third section, which enacts:
That no suit or proceedings shall be commenced by a
former owner or claimant, his heirs or assigns or his

or their legal representatives, to set aside any deed made in pursuance of any sale of land for taxes, or against the grantee in such deed, his heirs or assigns or legal representatives, to recover the possession of such lands, unless such suit or proceeding be commenced within one year after the recording of such deed in the county where the lands lie, except upon the grounds that the said lands were not subject to taxation, or that the taxes were paid or tendered, together with the expenses chargeable thereon before sale; and the recording of such deed shall be deemed such assertion of title or such entry into possession by the grantee, his heirs or assigns, as to authorize such suit or proceedings against him or them as for an actual entry. There was a saving clause in favor of persons of unsound mind, under guardianship, or imprisoned, of one year after the disability shall cease.

It was said of this section in Florida Savings Bank vs. Brittain, 20 Fla., 507, 513, 515, that it did not contemplate that the recording of the deed should be held equivalent to an actual entry, and that the section could be made applicable only to a case where the former owner is proceeding to set aside the deed or to recover the land from the tax purchaser, his heirs or assigns. The act of 1883, Chapter 3413, Section 61, enacted that no suit or proceeding should be commenced by the former owner or claimant, his heirs or assigns, or his or their representatives, to set aside any deed made in pursuance of any sale for taxes, or against the grantee in such deed, his heirs or assgins or legal representatives, to recover the possession of such lands, unless such suit or proceeding be commenced within three years after the recording of such deed in the county where the lands lie; and it was held in Graham

vs. Florida Land & Mortgage Co., 33 Fla., 356, 14 South. Rep., 796, that the statute did not of itself vest such possession of the lands in the grantee named in the tax deed as to authorize the former owner to sue for a recovery of the same at law and to defeat his remedy in equity to remove the tax deed as a cloud when it was such.

In the case before us the tax sale took place February 4th, 1878, on a tax assessment of 1877, and the tax deed to Richardson was executed March 8th, 1879, and filed for record on the 11th and recorded on the 12th of March, 1884. Mrs. King, who at her death was Mrs. Gilbert, was the owner of the land from 1862 until her death, which was in the latter part of December, 1884, or in January, 1885, and she was living on it when she died; and though she had not been living there long then, the testimony is she had been controlling the rents for several years prior to her death. A proper inference to be drawn from the evidence is that Richardson was never in possession of the land though he may have paid some tax on it. McNealy claims to have bought under an execution sale made August 4th, 1884, under judgments rendered against Richardson July 3rd, 1883, the former of these dates being also the date of the sheriff's deed to McNealy. McNealy had no possession during the life of Mrs. King. The statement of Cofield B. King to McNealy as to the latter's title "by tax deed" being good, and his agreeing to rent the place, made in the last illness of Mrs. King, had no effect as against her. McNealy says he did not tell Mrs. King that he had the tax deed.

Under the circumstances detailed above, our opinion is that the tax sale conveyed no title to Richardson, nor the execution sale any to McNealy. Neither

had any effect upon Mrs. King's title, and at her death the title was in her, and it descended to her three heirs, who were the defendant Cofield B. King her son, and the daughter and the surviving husband, Gilbert. If we concede for the purposes of this case that Mrs. King was barred of any relief in equity against the illegal tax deed as a cloud upon her title, such title was nevertheless of no effect against her title or possession, and it is no basis for any claim in favor of Richardson or McNealy. Neither of these two parties had any title to the land when Mrs. King died, and unless there are other circumstances in the record to change the result, the legal title in so far as it descended to Cofield B. King, became subject to the lien of the judgment of March 2nd, 1885, against him and in favor of the Chesapeake Guano Company.

The testimony to be noticed as capable of having the effect suggested is as follows: Dickson, a witness for plaintiff, says that after the death of Mrs. King, who was then in possession, the defendant, Cofield B. King, continued to live upon the land and cultivate the same, and was in possession during the year 1885 and until the Fall of 1886, when he moved some miles away; and that King rented from McNealy in 1885. McNealy says that in January, 1885, after Mrs. King's death, King rented the land from him and agreed to pay $16 rent for 1885; that witness was acquainted with the land, and it was worth $20 to $25 per year rental; he thought the latter a fair rental value. That he acknowledged his title to be a good one and rented the land from him; that King was unmarried at this time, but said he expected to marry soon; that at this time witness agreed to sell King the land for $40 payable in the Fall of 1885; gave him a bond for title, and in November, 1885, made the deed to his wife,

Mary F. King, and took up the bond. This deed bears date November, 30th, 1885, but was never recorded till November 6th, 1889, or a few days before the trial and nine months after the institution of this suit. King told witness when he took the bond that he expected to marry, and would want the deed in his wife's name. His wife paid the money herself, and at the same time paid the rental for 1885, King being not "right present, * * but near by, somewhere around the house." Another witness said $25 was a fair rental, and that there was a dwelling on the land in 1885, and that the fences were in better repair than when he was testifying. J. R. Taylor testified that in the Fall of 1885 Gilbert came to him to borrow some money for Mary F. King, saying she wanted to borrow it, and that he, Taylor, loaned him $56 for her and took security for it on a mule. It was the mule referred to hereafter. Gilbert says he was requested by her to borrow it. It also appears that in 1885 there was a voluntary division of the estate of Mrs. Louisa C. King (Gilbert), between Gilbert and the daughter, Mrs. Dickson, and the defendant, C. B. King, in which division the husband and the daughter each took a forty of land, and King took a mule. Gilbert, the husband, states they knew at that time that McNealy claimed the land in question by purchase, and that King said he could buy it from McNealy. An instrument executed, on this division, by Gilbert and King and wife, and relinquishing to Mrs. Dickson, the daughter, the interest of the former parties as heirs of the mother, Mrs. Louisa C. King, to the S. E. ¼ of the N. W. ¼ of the same section of land, bears date December 26th, 1885. Gilbert says the division was in 1885, and, he thought, in the Fall; that Mrs. Dickson and King executed a paper to witness showing the

forty he took, and he and King executed one to Mrs. Dickson showing the forty she took. B. S. Liddon, who was one of the attorneys of the Chesapeake Guano Company, says they dunned King repeatedly and threatened suit against him, and after judgment was obtained against him, King offered to sell them the land, but would never do so, and they advertised it for sale under execution, and not long before sale day he married and presented his claim to an exemption of the land, and for this reason they did not sell. That before they advertised the land for sale King told them that McNealy was claiming a tax title on the land and had threatened to sue him unless he would pay rent; and witness told him the tax deed was void, and that they would buy the place on the debt. That King claimed the land at that time and took his exemption on it when they offered to sell it.

It is entirely clear, if Mrs. Mary F. King, wife of C. B. King, is eliminated from this controversy, that the defendant C. B. King has no standing. The tax deed was void as to him, and he could not defeat a creditor by the simple recognition of a pretended title as superior to the valid interest inherited from his mother. What would be the effect of King's attornment to McNealy, if the latter still held the tax title and the tenancy continued, or if McNealy, or some *bona fide* assignee of his title, were in possession of the land, is a question we need not decide. In disposing of such question we would have to consider the effect of King's having possession at the time of the attornment, upon the creation of an estoppel upon him to deny McNealy's title (Sedgwick & Wait on Trial of Title to Land, sec. 357), and also the nature of King's holding and interest as a coparcener in all the lands of his mother. Had King taken title to himself

from McNealy, the latter's title being, as it was, void in law, and not a basis of recovery against him, or his coparceners, for all of whom he held, such title, and the transaction resulting in it, could certainly have no effect upon King's title.   In the lifetime of the mother, Mrs. Louisa C. King, the tax deed was a nullity as to her title, and so it was as to the title of her heirs after her death.   As to King and his creditors the title in King, after her death, was that derived from her; he derived none from McNealy, and when the judgment was rendered on March 2nd, 1885, against King, the title was in him and his coparceners and not in Mc-Nealy; and as between King and his coparceners the purchase of McNealy's title would have enured to the benefit of the several coparceners as a purchase by him of an outstanding title.   Had the deed from McNealy been to King instead of to his wife it is clear that it would be no obstacle to the sale of June 4th, 1888, at which Daniel purchased, nor would it have changed the character of Daniel's title.   The conveyance to Mrs. King does not present such a difficulty.   We see that when King made the contract of purchase he intended to marry, and stated that he would want the conveyance made to his wife; such, however, we do not understand to have been the written contract.   The deed to Mrs. King must be held to have been made in pursuance of the original desire of King.   The money used in paying the rental and purchase money agreed to be paid by him was raised on the security of King's property, the mule he had obtained from his mother's estate.   There is no evidence that Mrs. King ever parted with anything of her own for this money.   Any personal contract she made to pay the $56 was not binding on her.   The reliance of the lender was necessarily the lien on King's mule, and under all the cir-

cumstances of the case the only natural conclusion the jury could have reached is that the conveyance was made to the wife in pursuance of the original intention of King and to defeat his creditors. There is nothing to justify the conclusion that she did not take the title to this end.

Whether or not an assessment of the kind presented by this case, or a failure to advertise, will overcome or preclude the defense of the statute of limitations prescribed by Section 61 of the act of 1874, Chapter 1976, *supra*, in favor of a tax purchaser or his assignee who has duly recorded his deed and is in *bona fide* possession, we do not say. There is no such case before us. No tax purchaser or his assigns has ever been in possession. The real possession has been in Mrs. King and her heirs, or in King himself all the time, in so far as King's creditors and the appellant are concerned.

While there was no error in permitting the tax deed to be read, nor in refusing the motion to strike it out, as to have done this would not have been proper practice, still the court did err, under the facts of the case, in ignoring, as it did, both in instructions given and in refusing to give instructions asked, the principles announced above.

Judgment reversed.