## FLANAGAN et al. v. DUNNE.

(Circuit Court of Appeals, Fifth Circuit. January 15, 1901.)

No. 954.

**1. TAXATION—ASSESSMENT—VALIDITY.**

Laws Fla. c. 4115, §§ 21–23, require the owner of real property or his agent to return the same for taxation, and the property to be assessed against the owner, or to the unknown owner if no return is made and the owner is unknown. Rev. St. Fla. § 1982, provides that a mortgage creates a specific lien on real estate, and does not convey the legal title. The mortgagee of real estate, who was not in possession, made a return to the assessor showing that it was the mortgagee of the lands, and they were appraised to it. *Held*, that the purchaser at a tax sale thereunder acquired no title to the property as against a foreclosure purchaser, since the assessment was invalid.

**2. SAME—ESTOPPEL.**

Where the property was sold at a mortgage foreclosure to the mortgagee, but before the confirmation of the sale the bid was assigned to plaintiff, the latter is not estopped by the return of the mortgagee from denying the validity of the assessment and the sale thereunder, since he does not hold under the mortgagee, and is not bound by his acts.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

This is a bill brought by the appellee in the court below to have declared void certain tax sales made in 1895 for unpaid taxes of 1894, under which the respective appellants claim title to or interests in various parcels of land in Pasco county, Fla., alleged to be the property of the appellee. After several amendments to the bill, the cause was put at issue, and referred to a master of the court to state the facts. The master reported the facts of the case to be as follows: "(1) That in 1891 one Franklin L. Chase was the owner of the lands in controversy, and that in January of that year he executed a mortgage on these lands to the Florida Land & Improvement Company, and afterwards transferred all of said lands; and in the year 1893 the Florida Land & Lumber Company became the owner of them, and remained the owner until the foreclosure proceedings hereinafter set forth. That subsequently proceedings were instituted in this court to foreclose said mortgage. That on the 15th day of July, 1896, a decree of sale was entered in said cause in which decree one certain parcel of land was described as 19,919.80 acres, and W. A.

Carter was appointed master to make sale of the mortgage property. That on the 7th day of January, 1897, said master filed his report of sale in said cause, and attached thereto a copy of the advertisement of sale, in which one parcel of the land was advertised as containing 19,919.80 acres, and in the description by the numbers in the advertisement attached to the report the lands in controversy were included; said master reporting that the parcel containing 19,919.80 acres had been sold to the Florida Land & Improvement Company, it having bid therefor one-tenth of a cent per acre. That on the 11th day of February, 1897, said master filed a supplementary report in said cause, stating that he had had delivered to him, by the attorneys for the bidder, an assignment of the bid of the said Florida Land & Improvement Company for said 19,919.80 acres to John J. Dunne, and an acceptance of said assignment by him, attaching thereto said original assignment and acceptance, and asked that the original report be amended so as to constitute the said J. J. Dunne as the purchaser of said tract. That on the 11th day of February, 1897, the court rendered a decree, reciting therein the sale of the said 19,919.80 acres to the Florida Land & Improvement Company, and that the Florida Land & Improvement Company had 'duly assigned its bid for the said 19,919.80 acres of land last mentioned to J. J. Dunne, Esq., Philadelphia, Pa., and that the said J. J. Dunne had duly accepted said assignment,' and ordered the said master to execute the deed to the said Dunne for said 19,919.80; and I further find from the pleadings and the agreement of the attorneys filed before me that said deed was duly executed and delivered by the said W. A. Carter, special master, to J. J. Dunne, the complainant. (2) That the lands in controversy on the 1st day of January, A. D. 1894, were not the property of the Florida Land & Improvement Company, but that on said date the Florida Land & Improvement Company was the mortgagee of the same, and that it was not in actual possession thereof. (3) That the Florida Land & Improvement Company made to the tax assessor of Pasco county, Florida, J. S. Flanagan, one of the respondents in this sale, a tax return for the year of 1894 as follows: 'Tax Assessor, Pasco County: I herewith return the following list of land held by the Florida Land & Improvement Company, as mortgagee, in Pasco county, January 1st, 1894, at a valuation of '40 cents per acre, amounting to $32,282.00.'—in which list were included the lands in controversy; and no other return for taxation was made of said lands for that year. (4) That said lands in controversy were assessed for taxation for the year 1894 to the Florida Land & Improvement Company, and that the respondents claim under tax deeds based upon the tax sale of the unpaid taxes for that year. (5) That there was no signature, name, or designation of the tax collector of Pasco county, Florida, following the list of lands advertised for sale for taxes in said county for the year 1894, according to the form given in section 51, c. 4115. of the Laws of Florida; but there was a proper signature and designation attached to the notice preceding the list of lands advertised. (6) I find that the tax collector of Pasco county filed in the office of the clerk of the circuit court of that county a proper list of the lands sold for the unpaid taxes for 1894, accompanied by the proper certificate, as provided by section 56, c. 4115, of the Laws of Florida, and that the clerk of the circuit court entered said list in the book provided by the county commissioners for said purposes, but that he failed to enter or record the certificate of the tax collector to said report; and to said entry, as recorded, there is no signature or verification of any kind by the tax collector. (7) That the assessor of taxes of Pasco county. in making up the assessment roll of said county for 1894, set down opposite the descriptions of lands in said roll, as the valuation thereof, and the amount of taxes thereon, certain figures intended to represent the valuation and amount of taxes thereon in dollars and cents, but there is no dollar mark affixed to said sums, or any of them, but at the top of the lines wherein the amount of taxes are enumerated there is given the amount of millage on $100. (8) That the lands in section fourth (4), township twenty-five (25) south, range twenty (20) east, and the north half of the northwest quarter of section thirty-two (32), township twenty-five (25) south, range twenty (20) east, had been boxed for turpentine prior to the commencement of this suit; and the lands in section eight (8), township twenty-five (25) south, of range twenty (20) east, had been used for sawmill purposes, and a large part of the timber

thereon cut down and cut into sawlogs. (9) That the remainder of the lands described in the bill were, at the time of the bringing of this suit, wild, uncultivated, and unoccupied, and were in the actual possession of no one. (10) That the timber on the said lands constitutes the principal value of the lands described in the bill of complaint. (11) That the complainant never held these lands in trust for the Florida Land & Improvement Company. (12) That the complainant was not in 1894, nor at the commencement of this suit, an officer of the Florida Land & Improvement Company, and has not, since 1891, been a stockholder in said corporation." No exceptions were filed to the master's report, and thereupon a final judgment was entered adjudging the assessment of 1894 and the sale thereunder in 1895 void, and otherwise granting full relief to the plaintiff below. In this court the appellants assign errors as follows: "(1) The court erred in not dismissing the bill of complaint of the complainant on the ground that the findings of fact of the master, which were not excepted to, failed to set forth any error or irregularity in connection with the assessment or sale of the lands described in the bill of complaint, which was sufficient to avoid the tax sales and the deeds in pursuance thereof sought by the bill to be declared void, and clouds upon the title of complainant. (2) The court erred in its final decree rendered in said cause in decreeing that the assessment to the Florida Land & Improvement Company of the lands described in the bill of complaint was void, because the findings and report of the master, which were not excepted to, presented no basis upon which the court could decree the said assessment to be void. (3) The court erred in its said final decree in decreeing that the equities were with the complainant, and in granting the complainant the relief prayed, because the findings and report of the master, which were not excepted to, furnished no basis upon which a decree could be rendered in favor of the complainant. (4) The court erred in its said final decree in decreeing that Florida Land & Improvement Company made no return of the lands described in the bill of complaint for taxation, because the findings and report of the master, which were not excepted to, showed that the Florida Land & Improvement Company did return the said lands for assessment and taxation. (5) The court erred in its said final decree in decreeing that the notice of sale published by the tax collector was not signed in compliance with law, and that the tax sale in pursuance thereof was thereby illegal on the ground that the report of the master, which was not excepted to, showed that the said notice of sale was properly signed by the said tax collector in compliance with law."

Hugh C. Macfarlane, T. M. Shackleford, and J. F. Glenn, for appellants.

L. J. Starbuck, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The second assignment of error presents the main question on this appeal, and it is whether the assessment made in 1894 of the property of the Florida Land & Lumber Company in the name of the Florida Land & Improvement Company as owner was a valid assessment. The law of the state of Florida providing for the manner of making assessments on lands is as follows:

"Sec. 21. The lands in each county in this state, subject to taxation and not included in the limits of incorporated towns and cities and laid off in lots and blocks, shall be assessed by townships; and in making the assessment the assessor shall begin with the lowest numbered section in each township, and shall assess each lot, tract or parcel of land therein, in accordance with the description as returned for taxation by the owner or agent: provided, the assessor may correct any errors in the description so returned, and if the owner or agent fails to make such returns the assessor shall assess all lands not returned, according to the government survey, and can assess in one assessment all the lands in a section belonging to the same owner, or

assessed as 'unknown'; and the assessor shall continue in his assessment roll the description and assessment of the remaining sections in the township in the order of their numbers, and in the same manner he shall then assess all the other townships in his county in like manner: provided, that when private surveys of land or descriptions by metes and bounds have taken·the place of government surveys, and the land is known, designated, and described only by such private surveys or metes and bounds, the description in the assessment shall be made in accordance with such surveys or descriptions as recorded in the office of the clerk of the circuit court; and when Spanish grants or donations exist in any county in this state which have not been surveyed and platted, or which plats are not recorded in the office of the clerk of the circuit court, the assessor for such county shall assess the several tracts of land owned in such grants, not platted as above, describing the same by reference to deed of record, giving the book and page of record as appears in the office of the clerk of the circuit court, and if the deed conveying such tracts is not recorded upon its production to the assessor he may describe the land as being that tract, lot, piece or parcel described in a deed executed by the grantor, (naming him) to the grantee (naming him) therein, and bearing date (giving the date shown by deed), and such description shall be valid and sufficient for all purposes of the assessment. The county commissioners of each county in this state shall purchase and have mounted on cloth, and then bound in volume or volumes, two complete sets of photo-lithographed township maps in their respective counties, one to be kept in the office of the clerk of the circuit court and the other in the assessor's office in their several counties, and all these maps, and all maps and information which may come into the hands of the several assessors, which may be used in preparing the assessment roll, shall remain in the assessor's office and be delivered to his successor in office: provided, that any maps now owned by any tax assessor may be purchased at their discretion by the county commissioners at a reasonable price. And should any assessor so fail to deliver said maps as above provided, his bond shall be responsible to the value of said property, as required for the faithful discharge of his duty. He shall make the assessments of real estate in cities and towns, by lots and blocks, in regular order, throughout the original plan of the city or town, and all additions thereto, all the lots of a block to be listed in their regular order·under the letter, number or other designation of the block as filed and recorded in the office of the clerk of the circuit court, blocks also to follow in their regular order, (and all lots or sub-divisions of a block, when belonging to one owner and being numbered consecutively and lying contiguously, may be assessed together and the taxes extended on one line,) each of the smallest sub-divisions of such block to be entered and the taxes thereon to be extended separately.

"Sec. 22. The assessor shall ascertain by personal inspection, where not already sufficiently acquainted therewith, the value of the lands, and assess them at their full cash value, and set down in the assessment rolls following and opposite the description of the lands, the name of the owner or person in whose name the return is made, and when the land has not been returned and when the assessor has no means of discovering the name of the owner the assessor shall enter the word 'Unknown' in the column of the assessment roll provided for the name of the owners or persons making the return. The assessment books as provided by the comptroller shall contain an alphabetical index in which the assessor shall be required to indicate the name and the post-office address, if it can be ascertained, of each person whose name appears upon the assessment roll, and shall indicate opposite such name, as indexed, the pages upon which any tax or taxes may be found to be assessed.

"Sec. 23. In order to facilitate the assessor in ascertaining the names and post-office address of owners of real estate, the several clerks of the circuit courts in each county of this state, shall be required to furnish to the assessor of his county, on the first day of January of each year, an abstract showing the names of grantors and grantees, and description of land, and their post-office address, (if it can be ascertained), with date of transfer of deeds and conveyances which have been filed for record in his office during the previous year; which abstract of transfers shall guide the assessor in entering the

names of owners of real estate on the assessment roll for the ensuing year. The clerk of the circuit court in compensation for his services shall be allowed ten cents for each instrument of conveyance filed for record in his office, which amount he shall add to his legal costs for recording the same."

Laws Fla. c. 4115.

The intent of the lawmaker unquestionably was to have the assessments of lands in the names of the owners, and that the land should be assessed otherwise only when the assessor could not, with diligence and the means at hand, obtain the name of the owner, in which case the assessment could be entered "Owner Unknown." To find the name of the owner, the assessor was to look to the records, the returns, if any, made, and other information at hand. Under former statutes, very similar as to the duties of assessors, the purpose to assess the land in the name of the owner has been clearly decided. Thus, in L'Engle v. Railroad Co., 21 Fla. 353, it was held that an assessment in the name of one who claimed on a master's deed based upon the foreclosure of a mortgage, the mortgagor not having a good title, was void. And in L'Engle v. Wilson, Id. 461, it was held that an assessment to Parkhurst, when the land belonged to Wilson, the executor of the estate of Parkhurst, was void. See, also, to the same purport, Brown v. Castellaw, 33 Fla. 204, 210, 14 South. 822. In Stackpole v. Hancock, 40 Fla. 362, 384, 24 South. 914, 921, where lands belonged to W. P. Stackpole and J. L. Connor, and J. L. Connor made a return for taxation, yet the assessor returned the lands in the name of W. L. Connor, the assessment and all proceedings thereunder were held void. We quote from the case as follows:

"The evidence introduced by the complainants was sufficient to prove, in the absence of a counter showing, that the land was returned to the assessor for the year 1888 in the name of J. L. Connor, who was an owner to the extent of an undivided half interest, and that the assessor undertook to base his action in assessing the property upon this return. It was his duty to make the assessment to the owner or person making the return, but this was not done. The assessment was to a person not the owner, nor to one making the return, and in this respect it was clearly in violation of the statute."

The assessment law given supra authorizes returns to be made by owners and agents, and declares the consideration to be given by the assessor to such returns; and we are clear that when, by the law, the assessor is authorized to assess property in the name of the person who makes the return, the return referred to is the return authorized by the law,—the return made by the owner or agent, a legal return. And it is on this line that we understand the court in Stackpole v. Hancock, supra, where it was said, "It was his duty to make the assessment to the owner or person making the return." To hold otherwise would be to permit the assessor, who does not know the owner, and has no means of discovering the name of the owner, to receive and act on a return made by any one merely reciting that he was not the owner. In the present case no return was made by any owner or agent, nor purporting to be by any owner or agent. The return made and presumably acted upon shows on its face that it was by one who not only had no title, but did not claim any. Under the law of Florida a mortgage is a specific lien on the property therein described, and not a conveyance of the legal title or of the right of

possession. Rev. St. Fla. § 1982. See Pasco v. Gamble, 15 Fla. 562; Jordan v. Sayre, 24 Fla. 1, 3 South. 329. The return in question, so far as the assessment of the land to the owner was concerned, was wholly outside of the matter, and for the assessor to have taken it to make his tableau of assessment was unlawful, and invalidated the assessment. All proceedings on a void assessment are void. L'Engle v. Railroad Co., supra; L'Engle v. Wilson, supra; Brown v. Castellaw, 33 Fla. 204, 14 South. 822; Daniel v. Taylor, 33 Fla. 636, 15 South. 313. And see Stackpole v. Hancock, supra.

This decision renders it proper to affirm the decree of the court below without the necessity of considering other assignments, unless there be merit in the third assignment, which is so general in its character that it might be wholly disregarded under our rules. Under this assignment the appellant undertakes to raise the question that, as the Florida Land & Improvement Company made a return to the assessor that it held a mortgage upon the lands in controversy, upon which return the assessor assessed the lands in the name of the Florida Land & Improvement Company, and thereafter, on the foreclosure of a mortgage and the decree of sale thereunder, the Florida Land & Improvement Company became the successful bidder for the said lands, and before confirmation and deed assigned the bid to the present complainant, the present complainant is estopped from denying that the lands in controversy were not properly assessed to the Florida Land & Improvement Company as the owner. We have found that the act of the assessor, on the return of the Florida Land & Improvement Company, in assessing the lands to the company was illegal and void. The present complainant does not hold title under the Florida Land & Improvement Company, and is neither by deed, record, nor en pais estopped by any of the acts and declarations of said company. So far as this record goes, we doubt if there would be any estoppel as against the Florida Land & Improvement Company, if that company were before the court asking relief. In short, we find none of the elements of an estoppel as against the complainant, and hardly consider the argument made on that line as serious. The decree of the circuit court is affirmed.