## Price et al. *v.* Kramer et al.

1. Where the owner of a herd of cattle permits them to run in two counties it is his duty to make return to the assessors of both counties, showing the number he owned running in each on the first day of May. Failing to do so the assessors may act upon such means of knowledge as they possess in making the assessment. The owner, if aggrieved, may present the facts to the board of county commissioners.

2. Against an illegal tax the owner of personal property has a full and adequate remedy at law, and may not resort to a court of equity and through its instrumentality review and correct the assessment roll.

*Appeal from District Court of Pueblo County.*

KRAMER, the appellee, filed his complaint in the district court of Pueblo county, alleging:

*First.* That he is the owner of nine hundred cattle branded thus, Q on the left side and hip, and he does not know how many of said cattle are Texan and how many are American cattle, but thinks that about one-half of them are American cattle, and the other half are half breeds and Texan cattle; and that he is also the owner of thirty horses branded thus " Q " on left shoulder. That he was the owner of said cattle and horses during the year 1875, and has been ever since. That he resides in Pueblo county, aforesaid, and has so resided in said county all the time during the ten years last past. That all of said cattle and horses were assessed for taxes, and said taxes were levied and collected on the same, in, for, and by Pueblo county, aforesaid, for the years 1875 and 1876. That for the year 1875, said herd of cattle and horses were assessed for taxes, in said Pueblo county, at a less number than herein stated, and for the year 1876 at a greater number than herein stated, but that it was the same herd that was assessed in both instances; and the amount of said taxes so assessed and levied by Pueblo county, aforesaid, and which the plaintiff paid on said cattle and horses, was for said year 1875, one hundred and thirty dollars and seventy-two cents, and for said year of 1876, it was two hundred and twelve dollars and eighty-five cents.

*Second.* That the board of county commissioners of Bent county in the State of Colorado, one of the defendants herein, claims the right to tax and have taxed the same cattle and horses, and all of them, in and for Bent county, aforesaid, for the same years of 1875 and 1876, and have directed M. B. Price, one of the defendants herein, as treasurer of said Bent county, to collect said taxes on the same for said years of 1875 and 1876, and said Price, as such treasurer, during the year 1877 actually levied upon and seized one hundred of said cattle for taxes before that time

assessed and levied upon said cattle and horses, in, for, and by Bent county, aforesaid, for said years of 1875 and 1876, and threatens to sell and seize other property belonging to the said plaintiff for said taxes. That the amount of taxes thus levied and claimed by said Bent county upon said horses and cattle was and is two hundred and seventy-eight dollars and thirty-one cents for said year of 1875, and six hundred and fifty-three dollars and thirty cents for said year of 1876 ; and that said cattle and horses were assessed and taxed in Bent county, aforesaid, at a larger number than herein stated, but that it was the same herd that was thus taxed.

*Third.* The plaintiff further avers that in the year 1876, after the first day of May of that year, and after the assessment for taxes had been made in and for that year within said county of Bent and said Pueblo county, he purchased another herd of cattle running at large on the range, estimated by him to be four hundred cattle, in addition to the cattle above mentioned, and that the cattle thus purchased are still owned by him, are branded thus   on left side and hip.

*Fourth.* That all of said cattle and horses above mentioned, including those thus purchased in 1876, were assessed for taxes and were taxed in and by both and each of said counties of Bent and Pueblo for the year of 1877. That said Bent county, claiming the right to tax all of said cattle and horses for said year of 1877, has levied a tax of seven hundred and eighty-four dollars and fifty-five cents on the same for said year of 1877, and has directed its said treasurer to collect the same from the plaintiff and out of his property, and said treasurer is threatening to do so.

And plaintiff further avers that said Pueblo county, claiming the right to tax the same cattle and horses, for the year 1877, has levied a tax of four hundred and five dollars and seventy-six cents for said year 1877, and has directed George W. Morgan, one of the defendants herein named, as its treasurer, to collect the same from the plaintiff, and out of his

property ; and said Morgan as such treasurer is threatening to do so ; and that the plaintiff is in danger of being obliged to pay taxes twice upon the same property, to-wit, said cattle and horses for each of said years of 1875, 1876 and 1877; said taxes being claimed by each of said counties as above stated.

*Fifth.* .That the plaintiff is ignorant of the respective rights of the defendants. That, although plaintiff resided in Pueblo county as above stated during said years, and although on the 1st day of May of 1875, kept, held, and herded all of said horses and one hundred and twenty of said cattle in Pueblo county aforesaid, and on the 1st day of May of 1876, kept, herded and held all of said horses and two hundred of said cattle in Pueblo county aforesaid, and on the 1st day of May of 1877 kept, held and herded all of said horses and three hundred of said cattle in Pueblo county aforesaid, as it is his habit to keep his horses and such of his cattle as are weak, so far as he can conveniently, near his residence in Pueblo county, aforesaid, during the latter part of the winter, and a part of the spring, yet the said cattle and horses thus kept, herded and held, as above stated, during the greater portion of each of said years, were running at large, and all the rest of said cattle were running at large during each and all of said years of 1875, 1876 and 1877, and when so running at large, went and ranged where they happened to be driven by the storms, or where their own inclinations led them to go, and that sometimes during said years the greater portion of them (the exact number the plaintiff does not know) were in fact in Pueblo county aforesaid, and at other times the greater portion of them (the exact number the plaintiff does not know) were in fact in Bent county aforesaid, and that the plaintiff does not know how many of them were in either or each of said counties on the 1st day of May of each or either of the years 1875, 1876 and 1877, nor where as a matter of law those that were thus running at large were or would be said

to be held, kept, or herded on the 1st day of May of each or either of said years.

*Sixth.* The plaintiff admits that either the one or the other of said counties has the right to tax said cattle and horses for each of said years 1875, 1876, and 1877, but does not admit that the same cattle and horses, above mentioned, are taxable in both of said counties for the same year or each or either of said years. And plaintiff is ready and willing to pay into court, to be disposed of as the court shall direct, the said several sums claimed by the treasurer of Bent county as above stated, for taxes on said cattle and horses for each or either of said years of 1875, 1876 and 1877, and hereby offers to deposit the same in court, or to deliver the same to such person as the court shall direct, to be held subject to the order of this court. And the plaintiff is also willing and ready and offers to deposit in court, or deliver to such person as the court shall direct, the said sum of money claimed by the treasurer of Pueblo county, as above stated, for taxes upon said cattle and horses for the year 1877, to be held subject to the order of the court.

*Seventh.* That this action is not brought by collusion with either of said defendants.

Therefore the plaintiff demands judgment :

*First.* That the defendants be restrained by injunction from taking any proceedings against the plaintiff in relation to said taxes, or either of them, for either of said years 1875, 1876 or 1877.

*Second.* That they be required to interplead together concerning their claims to the said taxes upon the said cattle and horses for each of said years of 1875, 1876 and 1877.

*Third.* That some person be authorized to receive said several sums of money claimed for said taxes upon said cattle and horses by said counties, and their respective treasurers, for each of said years of 1875, 1876 and 1877, pending such litigation.

*Fourth.* That upon delivering to such receiver, the plain-

tiff be discharged from all liability to either of the defendants in relation thereto.

*Fifth.* And that the plaintiff's costs be paid out of the same.

LUDWIG KRAMER,<br>*Plaintiff.*

By BENJ. MATTICE,
 *Attorney for Plaintiff.*"

The defendants demurred as follows :

"M. B. Price, treasurer of Bent county ; The board of county commissioners of Bent county ; Geo. W. Morgan, treasurer of Pueblo county; and the board of county commissioners of Pueblo county, *ats.* Ludwig Kramer.

The defendants, M. B. Price, treasurer of Bent county, and the board of county commissioners of Bent county, demur to the plaintiff's complaint on the following grounds :

*First.* That several causes of action have been improperly united in this, that the plaintiff's grounds for relief by way of interpleader as to the taxes assessed against him for the years 1875, 1876 and 1877 constitute, as to the taxes of each year, a separate cause of action to be separately stated.

*Second.* That the complainant does not state facts sufficient to constitute a cause of action.

*Third.* The complaint is ambiguous, unintelligible and uncertain in this :

*a.* It does not show that the cattle and horses mentioned in the complaint were *all* the cattle and horses owned by plaintiff and ranging in Bent county and Pueblo county during the years 1875, 1876 and 1877.

*b.* It does not appear with sufficient certainty that the taxes assessed against the plaintiff by Pueblo and Bent counties, and each of them for the years aforesaid, were for the same cattle and horses.

By CHAS. E. GAST,<br>*their Attorney.*

The demurrer was overruled, and the defendants electing to stand by their demurrer, the court entered judgment thereon in favor of the plaintiff, in accordance with the prayer of the complaint. The defendants appealed.

Mr. JOHN F. BOSTWICK, and Mr. CHAS. E. GAST, for appellants.

Mr. BENJAMIN MATTICE, and Messrs. WELLS, SMITH & MACON, for appellee.

ELBERT, J. The bill alleges complainant's ownership of thirteen hundred head of cattle, but does not show how many head were listed to him by each county for the several years named. These facts were easily ascertainable from the assessment rolls, and the failure to allege them leaves the bill in this respect uncertain. Neither does it show that the number listed in one county corresponded with the number listed in the other county for any one year. On the other hand, it is alleged that for the year 1875, the complainant was listed in the county of Pueblo for a less number and for the year 1876 for a greater number than he owned, and in the county of Bent for the year 1876, also for a greater number. The general allegations that "all of the said cattle were taxed in said counties," and that "it was the same herd" must be taken subject to these more specific allegations.

There is no allegation that the board of county commissioners of Pueblo county claims the right to tax the cattle of complainant, that on the 1st day of May of the year for which the tax was levied, were in the county of Bent; nor is there any allegation that the board of county commissioners of the county of Bent claims the right to tax the cattle of complainant, that on the 1st day of May were in the county of Pueblo. Nor could any doubt arise upon either proposition if such right were asserted by either defendant. The law is plain, * * * "horses, mules, cattle and sheep running at large and not worked, shall in all cases

be returned and assessed in the county in which they are being herded or kept on the 1st day of May in each year." Applying the most liberal construction to the allegations of the bill of complaint, they amount to this—that the complainant is the owner of thirteen hundred head of cattle, which roam at will in both the counties of Pueblo and Bent; that they are scattered here and there as their inclinations may lead them or the storms may drive them; that he is ignorant of how many head were on the 1st day of May of either of said years named, in the respective counties; and that consequently he is ignorant of how many head each county had a legal right to tax for either of said years; that for each of said years both of the said defendants have taxed him in some instances for more cattle than he owned in both of said counties, and in some instances for a less number; that consequently for each of said years he has been listed and taxed for too large a number of cattle by one or the other of the said defendants; but by which he does not know, because he is ignorant of the *locus* of his cattle on the 1st day of May of the several years named.

It is plain that the whole difficulty grows out of uncertainty respecting a question of fact, namely : the *locus* of the complainant's cattle on the 1st day of May of the years 1875, 1876 and 1877. Is this a proper case for the interference of a court of equity by an order of interpleader?

Under the law it was the duty of the complainant to make return to the assessors of both counties, showing the number of cattle he owned running in each of the counties on the 1st day of May. In estimating cattle, the result may not be reached with entire certainty, but the duty is nevertheless imposed upon the owners to make some return upon which the authorities may act. Failing to furnish the information it is the duty of the assessor to act upon what means of knowledge he possesses. In any case, if injustice is done, either in assessing him for a larger number of cattle than are properly taxable, or in assessing him at all, he

may present the facts to the commissioners, who constitute a board of equalization with power to correct the assessment roll. Revenue Laws of 1870, §§ 24, 29 and 39.

In the case of the *People ex rel. Crawford* v. *Lathrop et al.*, 3 Col. 465, in speaking of the same provisions re-enacted, the court say : " We find here a complete system, with well-defined and minutely prescribed rules and regulations, guarding the property rights of the citizen, guarding equally the revenue necessities of the State, acting through the instrumentalities of owners and assessors chosen by the electors of the several counties, listing, valuing and returning taxable property under the sanction of an oath, with the board of county commissioners acting as a board of appeal and review, all for the one purpose of ascertaining, determining and fixing the value of taxable property in each county of the State as a basis of taxation.

Here is a mode prescribed and a tribunal established by the law, for the purpose of determining the very question out of which the complainant's grievances arise. It does not appear that the complainant ever listed his property in either of the counties for either of the years named ; nor does it appear that having been listed as he claims for too many cattle in each county, that he ever appeared before the county commissioners to have the assessment roll corrected. The proposition that a court of equity will take jurisdiction in such a case amounts to this : that the owner of personal property of doubtful *locus* may neglect his statutory duty of listing his property in the proper county, may neglect to appear before the tribunals established by law for the correction of errors in assessments, and by his bill of interpleader, devolve the duties of himself, the assessor and the board of county commissioners upon a court of equity, and through its instrumentalities review and correct the assessment rolls. The proposition is not to be entertained. Nor is the plea of difficulty and expense a ground for equitable interference.

If there be difficulty and expense involved in determin-

ing the number of his cattle for which the complainant was legally taxable in each county, it is an incident to the kind of property and the complainant's mode of keeping it. Having neglected his statutory duty to list it, there is no propriety or equity by an order of interpleader to release him and throw this hardship and expense on the defendants.

Against an illegal tax complainant has a full and adequate remedy at law, and we see no reason why in this case he should not be remitted to that remedy. Cooley on Tax. 528; *Brewer* v. *Springfield*, 97 Mass. 152; *Brooklyn* v. *Messerole*, 26 Wend. 132; Rev. Law, Sess. 1870, p. 123, § 106.

The text of Mr. Story (2 Story's Eq. Juris.; § 813 a), relied on by counsel for complainant, does not contemplate any such case, nor are the authorities upon which the text is based at all like the case at bar. In both the case of *Thompson* v. *Ebberts*, 1 Hopkins, 272, and in the case of *Mohawk*, etc., *Co.* v. *Clute*, 4 Paige, 384, there was a doubt of law — not a doubt of fact — arising from the laches of the complainant, and which the complainant's duty required him to ascertain.

The decree of the court below is reversed and the case remanded.

*Reversed.*