THE CITY OF ORLANDO, APPELLANT, v. NANNIE B. GILES AND JAMES L. GILES, HER HUSBAND, APPELLEES.

1. Chapter 5317 of the laws of 1903, has the effect of validating all assessments of taxes upon real estate in the city of Orlando liable to assessment, made by the proper officers of the city, and which the city had jurisdiction to assess for the years 1899, 1900, 1901 and 1902, and of making such assessments liens on the property assessed, and such a validation cannot be defeated by the defense that real estate was not assessed to the true owner, or that its valuation was unequal and discriminative, when it is not shown that the true owner ever applied in proper time to the City Council to have the same equalized, and when no fraud in making the assessment is shown.

2. So far as the 18th section of Chapter 5317, laws of 1903, undertakes to validate any sale for taxes for the years 1900, 1901 and 1902, where the assessment on which any such sale was based, was not made to the owner of the property as required by law, such attempt to validate is void and of no effect, and in a foreclosure suit by the city to recover the taxes assessed and validated, the owner is

not liable for the costs of such illegal sale; but it is competent for the legislature to change the method of collecting delinquent taxes, and of imposing the costs of collection including a solicitor's fee, and the city by proceeding under the act of the legislature thereby waives any rights it may have acquired by any previous sale for taxes under previous laws.

3. The objection that certified copies of the assessments of unpaid taxes made by the tax collector of the city of Orlando, under section 13, Chapter 5317, and furnished the city solicitor, are vague and indefinite because not addressed to any one, or to the city solicitor, if tenable at all are not so in cases where at the bottom of such certificate on the left side, is the name "Louis C. Massey, City Solicitor."

This case was decided by Division B.

Appeal from the Circuit Court for Orange County.

STATEMENT,

On the 18th of July, 1904, appellant filed a bill in the Circuit Court of Orange County alleging substantially that: 1st. On August 6th, 1900, at its city tax sale, based on the assessment roll of the year 1899, an undivided $\frac{1}{4}$ interest in Lot 11, Block 25, and in the West 33 feet of Lot 12, Block 25 of R. R. Reed's addition to Orlando, less part in the street, was regularly bid off for appellant in the sum of $105.40, then due for taxes of 1899 and costs, and tax certificate No. 244 of that year was regularly issued to the apellant therefor, which appellant holds as a lien against the said real estate, and which is due with interest at the rate of ten per cent. per annum from August 6th, 1900, and costs.

2nd.    That July 7th, 1902, at the city tax sale based on the assessment roll of 1901, the same interest and real estate was bid off for the orator for $112.60 then due for taxes of 1901, and costs, and tax certificate No. 169 issued therefor, which orator holds as a lien against said real estate and which is due with interest at 10 per cent per annum from said date, and costs.

3rd. That orator assessed for taxes $100.00 on the same interest in same real estate for 1902, and because said taxes remained due and unpaid on June 30th, 1903, the city tax collector on July 1st, 1903, delivered a certified copy of the said unpaid assesment and taxes (No. 166 of 1903) to the city  solicitor of the  orator, and  orator claims a lien on said real estate for $100.00 said unpaid taxes with interest at 12 per cent per annum from June 30th, 1903.

4th.    That on July 7th, 1902, at its city tax sale based on the assessment roll of 1901, another undivided ¼ interest in the same real estate was regularly bid off for orator, in the sum of $112.60, then due for taxes of 1901, and for costs, and tax certificate No. 166 of that year was issued to the orator therefor, which it holds as a lien, &c., with interest at 10 per cent per annum from said July 7th, 1902.

5th.    That in the year 1902 orator assessed for city taxes of that year the sum of $100.00 on last mentioned ¼ interest in same real estate, and because the same was unpaid on June 30th, 1903, the city tax collector on July 1st, 1903, delivered a certified copy of said unpaid assessment and taxes (No. 165 of 1903) to the City Solicitor of orator, and orator claims a lien on said real estate for said sum, which is unpaid, with interest at 12 per cent per annum from June 30th, 1903, and costs.

6th. That Nannie B. Giles is named as the owner of said interests in both certified copies of 1903.

The bill prays for an accounting of what is due for the taxes aforesaid, costs and reasonable attorneys' fees, and unless the amounts found to be due are not paid before a sale that the property be sold, &c. The certificates are attached to the bill as parts thereof.

It appears, therefore, from the bill that taxes, &c., are claimed on the first described ¼ undivided interest under these certificates, *viz*:

Taxes of 1899, Certificate No. 244.

Taxes of 1901, Certificate No. 169.

Taxes of 1902, Certificate No. 166.

On the second ¼ interest taxes are claimed as follows:

Taxes of 1901, Certificate No. 166.

Taxes of 1902, Certificate No. 165.

On the 14th of April, 1903, the respondents answered the bill alleging substantially: 1st. That Nannie B. Giles is the owner in her own right of the lands described in the bill; that she acquired title to an undivided ¼ interest by purchase from the executors of N. C. Motley, on the 7th of September, 1900, and that she acquired the other ¼ interest from the executors of John H. Gilbert, on the 29th of March, 1902. (Certificate No. 244, taxes of 1899.)

2nd. That the interest acquired from the executors of Motley, was assesed for taxes of 1899, as the property of J. D. Robertson, Executor; that said assessment was void because it did not assess the land in the name of the owner thereof or as unknown, as required by law, but assessed it in the name of a person who did not own it; that said interest was assessed in 1899 at a valuation of $7,000.00 which was unequitable and unfair, this being greatly in excess of the valuation placed on other prop-

erty of equal market value in the near vicinity, and also in other parts of Orlando; that the State Bank of Orlando also owned an undivided $\frac{1}{4}$ interest in the same property; that the property is of equal value to that of N. B. Giles bought by her of estate of Motley; that the stock of the bank was of the par value of $25,000.00 and that stock and said $\frac{1}{4}$ undivided interest of the bank was assessed for $12,500.00, and therefore, that the assessment of N. B. Giles' interest at $7000.00 was unequal and a discrimination against the rights of defendant; that the sale was made and report filed and recorded in the clerk's office of the Circuit Court, but there is no record of any advertisement of said property in said office as required by law, and no copy thereof on file as required by law, and no affidavit of the publisher of any newspaper attached to the report as required by law, and that the certificate issued by the tax collector does not set forth the name of the owner, nor the particular interest sold in said land, and that it is vague and indefinite. (Certificate No. 169, taxes of 1901.) That the assessment of 1901 was made to James L. Giles as an undivided $\frac{1}{4}$ interest in the property described in the bill; that at the time of said assessment, and during 1901, James L. Giles was not the owner of any portion of said land, but the title of said property was vested in the State Bank of Orlando, the estate of Peleg Peckman, Annie B. Giles and John H. Gilbert or his estate; and that the said assessment to James L. Giles was void. The answer then alleges an unequal valuation and discrimination as is substantially set forth, and the same defects in the certificate and other matters as are set forth in the answer, as to the first certificate No. 244.

The answer then alleges that on the 29th of March, 1902, Nannie B. Giles acquired by purchase from the

estate of John H. Gilbert another $\frac{1}{4}$ interest in the property, which made her the owner of an undivided half interest in said property; that the Gilbert interest was assessed for 1901 to J. H. Gilbert for said year, and was excessive and inequitable, greatly in excess of the valuation of other property in the vicinity of equal value, and that it was a discrimination against the interest owned by J. H. Gilbert, and alleging the same facts in regard to the property of the State Bank of Orlando, as were alleged in regard to the former assessment. The answer then alleges that Nannie B. Giles purchased the interest of Motley on September 7th, 1900, for $3,500.00; that the representatives of said estate had made repeated efforts to sell said interest for said sum and had failed to do so, had offered it for $3,000.00, but later raised the price to $3,500, at which price Nannie B. Giles purchased it; and that on March 29th, 1902, she purchased the interest of J. H. Gilbert for $2,500.00; that defendants made repeated efforts to have the said assessments reduced, and endeavored to settle with the city of Orlando by paying a fair and equitable amount for the redemption of the property, but without avail; the respondents deny that said certificates are liens upon the property of Nannie B. Giles; that if the city acquired any rights under said sale and assessment the same ripened into a title to said property on the 7th of July, 1904, and prior thereto, and its lien if any, has merged into a title, and complainant should not be allowed to foreclose—and further reserve the right to raise this question of law at the final hearing. (Certificate No. 166, taxes of 1902, and certificate No. 165, taxes of 1902.)

The answer further alleges that the assessment of 1902 was improperly assessed in two separate and distinct assessments, whereas, as Nannie B. Giles then owned two

$\frac{1}{4}$ interests, it should have been assessed as $\frac{1}{2}$ undivided interest in the said land. As to this assessment it is also alleged that it was excessive, it being $6,250 for each $\frac{1}{4}$ interest, comparing it with the valuation put on the interest and stock of the State Bank of Orlando, which was $14,565.00.

The answer further alleges that defendants have made repeated efforts to have the assessment on said lots reduced to a fair and equitable  valuation, but the  city council have refused to make any reduction.

The answer then alleges that after said taxes had been. assessed for 1902, the city of Orlando had a special law enacted by the Legislature of Florida, declaring such assessments a lien upon said property and authorizing a foreclosure of said lien, but allege that said law is unconstitutional; that it undertakes to impose additional burdens in the way of attorneys' fees and costs of collecting assessments made prior to the enacting of said law, and reserves this as a question of law by way of demurrer to the bill. The answer further alleges that certificates represented by Exhibits "D" and "E," to the bill are vague and indefinite in that they are not addressed to any one, or to the City Solicitor especially, and that the city should not be permitted to combine in this suit the several certificates mentioned.

The cause was set down for hearing by the complainant on bill and answer, was heard, and the following order entered by the Circuit Judge on the 9th of July, 1905, *viz*: "And now this cause came on for hearing on bill and answer, and was argued by counsel for the complainant and for respondents, and thereupon the court being of the opinion that the answer shows an inequality of assessment against the defendants, which ought in equity to be corrected, doth order and decree that this cause be

referred to William Martin, Esq., a practicing solicitor of this court, as master, to ascertain and report what would have been a fair and equal assessment of the defendant's property in each of the years for which inequality of assessment is alleged, and also what would have been the amount of the taxes thereon for each of such years on such fair and equal assessment according to the city tax levy in those years respectively."

From this order an appeal was taken to this court by the appellant, the complainant below.

*L. C. Massey,* for Appellant.

*Beggs & Palmer,* for Appellees.

HOCKER, J., (*after stating the facts.*). The assignments of error are: 1st. The court below erred in making the decree of reference to ascertain and report an equitable assessment thereon.

2nd. The court below erred in not making a decree of foreclosure and sale in favor of the complainant for the full amount of taxes claimed, with interest and costs, including the City Solicitor's fees.

The City of Orlando was incorporated under the general laws for the incorporation of cities and towns, and subsequently by Chapter 3629 laws of 1885, its government was legalized. By Chapter 3786, Laws of 1887, the city was authorized to levy taxes, and assess property. The fourth section of this act provided that real estate should be assessed to the owner or owners, and as "unknown," when the assessor after proper effort should fail to ascertain the owner. The fifth and sixth sections provided for reviewing the assessment roll by the assessor

29 S. C.

and city council, and that the city council should meet at the Council Chamber on the second Monday in September of each year for the purpose of equalizing assessments of real estate and for hearing all persons who might be aggrieved by assessments and gave it authority to change the value of real estate.

This act seems to have continued in force until 1899, when Chapter 4879, Laws of that year was passed. The title of this act is: "An Act Relating to the Assessment, Levy and Collection of Taxes by the City of Orlando," and repealed all conflicting laws. By its terms (section 20) it was to take effect on January 1st, 1890. By sections 6 and 7 of this act provision is made for equalizing assessments, and for objections by property owners and others, either orally or by filing them with the City Clerk. The methods of enforcing the tax in the general revenue law (1895) were to be pursued as far as practicable. In 1903, the Legislature passed Chapter 5317, laws of that year, the title of which is: "An Act to Provide for the Assessment and Collection of the taxes for the city of Orlando, and for the collection of the back taxes and Tax Sale Certificates of said city." This act was approved by the Governor April 30th, 1903, and by its terms went into immediate effect on the approval.

The sixth section provides for the hearing of objections to assessments and for reviewing them by the City Council.

The tenth section provides: "All taxes on the assessment roll shall be due and payable on the first day of September in each year, or as soon thereafter as the assessment roll shall come into the hands of the tax collector, of which he shall give notice by publication at least once in some newspaper published in the city. The collection of all such taxes remaining due and unpaid

on the first day of January thereafter shall be enforced in the manner hereinafter provided, and interest at the rate of twelve per cent per annum from the date of said publication of notice by the tax collector shall be added thereto and collected as part of the tax."

The eleventh section provides that all taxes on real and personal property shall be a lien superior to all others, and shall relate back to the first day of January of the year for which they are assessed and levied. The taxes on real property shall be and remain a lien until paid, and shall not be barred by any statute of limitations.

The thirteenth section contains the following provision: "If the taxes on any real estate shall not be paid before the first day of January next after the roll shall have come into the hands of the tax collector, he may at any time thereafter make from the roll a copy of any assessment and tax thereon remaining unpaid, showing the assessment of any lot, parcel or tract of real estate as the same appears upon the roll with the tax which he shall certify to be a true copy from the roll, and shall deliver the same to the city solicitor of the city of Orlando for collection; which certified copy shall be prima facie evidence of the contents of the assessment roll and of the levies made theron, and of the regularity and validity of all the proceedings on which the same is based, in all suits to enforce the payment of the lien of such taxes as may appear upon the said certified copy, and the tax collector shall, upon the request of the city solicitor, make out and deliver to him a certified copy of any such assessment or assessments remaining unpaid on and after the thirty-first day of December in any year. The city council also may direct the tax collector at any time after the first day of January in each year, either by resolution or by ordinance, to make out and deliver to the

city solicitor such copy or copies, and may also in like manner direct the city solicitor to proceed upon the same to enforce the payment of the tax or taxes. The tax collector upon delivering any such copy to the city solicitor, shall enter upon the assessment on the roll that it has been certified to the city solicitor, with the date of delivery, and thereafter the collection of such tax shall be made by the city solicitor, and not by the tax collector.

The city solicitor upon receiving any such certified copy as aforesaid, may and when directed by the city council shall bring in the Circuit Court for Orange county a bill in chancery to foreclose the lien of the taxes so shown to be due and unpaid, which bill shall allege the city's claim of lien against the real estate described, and shall be brought in the name of the city of Orlando as plaintiff against the person named as owner of the real estate on the said certified copy, if any person be named as owner, and such other persons as the city solicitor may know, or have satisfactory reason to believe to be owners of or interested in such real estate or to have any right thereto or lien thereon except as tenants."

The fourteenth section provides that no assessment and no assessment roll under this act shall be set aside or in anywise invalidated by any court for any error, defect, informality or omission which shall not amount to a want of due process of law under the constitution of this State or of the United States, nor shall any assessment or any assessment roll be set aside, or in any wise invalidated for any error, defect, informality or omission whatever prior to the expiration of the right of petition, if the owner or party interested shall have failed to petition the city council as hereinbefore provided.

The fifteenth section gives the City Solicitor 5 per cent. on all taxes collected by him without suit, and in suits

where the city prevails he is entitled to a reasonable attorney's fee to be taxed as part of the costs which shall be regarded as further penalties for nonpayment of taxes within the time prescribed by law.

The seventeenth section of said act is as follows: "The assessment roll of the city of Orlando for the year 1902 and all assessments thereon are hereby validated and confirmed, and the same shall not be set aside or in anywise invalidated for any error, defect, informality or omission which shall not amount to a want of due process of law under the Constitution of this State or the Constitution of the United States. No tax sale shall be held to collect the unpaid taxes thereon but said taxes shall be a lien until paid, without limitation, and the proceedings to enforce the payment of the said taxes and to foreclose their lien shall be as hereinbefore provided in this act. The time for the payment of the said taxes is hereby extended to and including the 30th day of June, A. D. 1903, after which date a certified copy of the unpaid assessments and taxes on real estate on the said roll shall be delivered to the City Solicitor with the same effect and in the same manner as is hereinbefore provided and the City Solicitor shall with all convenient speed proceed to collect the same with costs as is provided in this act for the collection of taxes levied under the authority of this act."

The eighteenth section is as follows: "The assessment rolls of the city of Orlando for the year 1899, 1900, and 1901, with all assessments thereon and the tax sales of the city in the years 1900, 1901 and 1902 based thereon are hereby validated and confirmed and the same shall not be set aside or in anywise invalidated for any error, defect, informality or omission which shall not amount to

a want of due process of law under the Constitution of
this State or the Constitution of the United States. The
tax sale certificates issued at said sales to the city and
still held by it are hereby  declared to be liens  on the
properties described in such certificates respectively with-
out limitation and the city shall not be entitled to take
possession of the properties  bought by it at such  tax
sales, nor shall it be required or permitted to bring suit
for the recovery of any of the lands so bought by it, but
the lien of the said certificates shall be enforced in the
manner provided by this act as to the liens of taxes as-
sessed under the authority of this act.  The time for the
taking up of said certificates is hereby extended to and
including the 30th day of June, A. D. 1903, after which
date said tax sale certificates shall be delivered to the
City Solicitor and the City Solicitor shall proceed with
all convenient speed to collect the same with costs as is
provided in this act for the collection of taxes levied by
authority of this act.  Such certificates shall be prima
facie evidence of the regularity and validity of all the
proceedings on which the same are based in all particu-
lars which may not be validated by this section."

The twenty-first section provides that "Nothing in this
act contained shall impair the validity of any assessment
of taxes by the city prior to the taking effect of the
same."

The twenty-second section repealed all conflicting laws
so far as they affect the said city.

Let us now examine the questions presented in the light
of the rule that where a cause is set down for hearing on
the bill and answer, all matters well pleaded therein,
responsive to the bill are to be taken as true.

It will be noticed that the answer does not question
the constitutionality of sections 17 and 18 of Chapter

5317 Laws of 1903, except that the act "imposes addi-
tional burdens in the way of attorneys' fees and costs of
collecting assessments made prior to the enacting of said
law." The seventeenth section validated and confirmed
the assessment for 1902. The eighteenth section validated
the assessments for 1899, 1900 and 1901, and also the tax
sales of the city in the years 1900, 1901 and 1902, and
made the latter liens on the property described to be en-
forced as liens of taxes assessed under the authority of
this act, and prima facie evidence of the regularity and
validity of all proceedings in which the same are based
in all particulars which may not be validated by this sec-
tion.

This court has held in several cases that the Legisla-
ture has power to validate and legalize assessments and
levies of taxes which but for such legalizing action
would be irregular and invalid. Smith v. Longe, 20 Fla.
697; City of Jacksonville v. Basnett, Id. 525; Parker v.
City of Jacksonville, 37 Fla. 342, text 353, 20 South. Rep.
538. In Middleton v. City of St. Augustine, 42 Fla. 287,
29 South. Rep. 421, second headnote, the law is thus
stated: "The rule in respect to statutes curing defects in
legal proceedings where they amount to mere irregular-
ities, not extending to matters of jurisdiction, and in the
absence of constitutional limitations, is that if the thing
wanting, or which failed to be done and which constitutes
the defects in the proceedings, is something the necessity
for which the legislature might have dispensed with by
prior statute, then it is not beyond the power of the Leg-
islature to dispense with it by subsequent statute; and if
the irregularity consists in doing some act, or in the mode
or manner of doing some act, which the legislature might
have made immaterial by prior law, it is equally com-
petent to make the same immaterial by a subsequent

law." Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 251; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 8; Cooley's Const. Lim. (7th ed.) 544; Am. & Eng. Ency. Law (2nd ed.) 945 and notes—946.

In the case of People v. Goldtree, 44 Cal. 323, the court on page 325, says: "It will readily be conceded that the Legislature possesses the power to pass curative Acts, by which the various acts and proceedings of the officers and Board charged with the levying and assessing of taxes, are rendered valid and legal, notwithstanding that irregularities and errors have intervened; and the cases are quite harmonious on the point in other States as well as this. There are, however, defects which are mostly either of a jurisdictional character, or those which become such by reason of some constitutional provision, which are beyond the reach of curative acts. It is impossible to draw a well defined line between the classes of defects which may, and those which may not, be remedied by curative legislation; nor are the authorities on the subject reconciliable. There are defects, which, under our Constitution, are incurable by any subsequent legislation—such as an assessment of property situated without the Assessor's county or district; an assessment made by the Board of Equalization; the exemption of particular property or a particular person's property from taxation; the levying of different rates of taxation upon different species of property; and a judgment for the recovery of taxes rendered in a case in which the court had not acquired jurisdiction of the person assessed; and the enumeration might be extended. In those instances, the defect consists of a want of power or jurisdiction in the officer or tribunal assuming to act in the matter; and we think it may safely be laid down as a rule in these

matters, that whenever the officer had no power or juris-
diction to do the act in question, and not that in its per-
formance he did not pursue the law in respect to time,
mode, or some other particular, the act is void, and sub-
sequent legislation cannot cure the defect."

In the latter part of the 3rd note pp. 545 and 546,
Cooley's Const. Lim. *supra,* it is said "the general rule is
undoubted that a sale for illegal taxes cannot be vali-
dated," and the authorities quoted sustain that position.
We think this is a sound position, for by the  sale the
owner is divested of his property and the act of valida-
tion cuts him off from defenses which otherwise would
show the sale void, and such act of validation would not
be due process of law.   But no such principle applies to
the validation of *assessments* for taxes, which after vali-
dation the owner has opportunity to pay or tender as he
had under this act.   Castillo v. McConnico, 168 U. S. 674,
text 680 et seq., 18 Sup. Ct. Rep. 229; Turpin v. Lemon,
187 U. S. 51, text 58, 23 Sup. Ct. Rep. 20. Applying these
principles we are of opinion that all the objections inter-
posed in the answer to the relief asked by the bill are met
by the validating act, so far as they are tenable, except
that said act in so far as it undertakes to validate *sales*
under previous assessments, which are shown to have
been void because not made to the true owner of the
property is unconstitutional.   Daniel v. Taylor, 33 Fla.
636, text 645, 15 South. Rep. 313, and cases cited.   In
other respects it seems to us to  be  constitutional.   As
to the assessments themselves, it appears that the city
had jurisdiction to assess and tax the property involved;
that the assessor did attempt to make an assessment, and
it does not appear that the taxes have been paid or
tendered.   What we have said will apply to the alleged

inequalities and discriminations in the assessments. The answer does not allege that the true owners of the property ever attempted to have the assessment equalized by application to the town council and no fraud is alleged, The alleged inequalities and discriminations are not clearly set up in the answer, because it is not shown what, if any, was the cash value of the bank stock. It may have been worth less than par. But if they existed, they might have resulted from the ignorance or bad judgment of the assessing officer, and might have been corrected on a timely application by the owners of the lots herein involved, to the City Council, as a reviewing board, for which review all the acts of the legislature we have been considering, provided. There is a general allegation in the answer that defendants made repeated efforts to have the assssments reduced, but it wholly fails to state to whom, or when such applications were made. This allegation is not sufficient to show an application to the assessor or town council such as is contemplated by the statutes.

In 2 Cooley on Taxation (3rd ed.) p. 1382, it is said: "The courts of either common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies except as they may be specifically empowered by law to do so." And on page 1459 Id. it is said: "A tax founded on a fraudulent assessment will be enjoined. An assessment is not fraudulent merely because of being excessive, if the assessors have not acted from improper motive; but if it is purposely made too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, or through the adoption of a rule which is designed to operate unequally upon a class and

to violate the constitutional rule of uniformity the case is a plain one for the equitable remedy by injunction. So is any case in which a tax is rendered unequal or unfair by fraudulent or reckless conduct of officers, or in which the party is deprived by like practices of important rights which the law intends to secure to him, such for instance as the right of appeal from an assessment, or to be heard by the board of review before his assessment should be raised. But mere irregularities in the proceedings of tax officers do not make out fraud, or even give evidence of it. And fraud must be alleged and proved; all presumptions are against it."

In Price v. Kramer, 4 Colo. 546, it was held: "If one has failed to make the statutory return, and to appeal to the board of equalization he can have no remedy in the courts."

In 2 Cooley on Taxation (3rd ed.) pp. 1386-8, it is said: "the general rule is that if one fails to appeal to the statutory board of review, he can have no remedy in the courts"—quoting a large number of cases in note 2, p. 1388.

In the case of Jackson County v. Thornton, 44 Fla. 610, 33 South. Rep. 291, this court held that where taxpayers do not avail themselves of the privilege afforded by law of being heard before the equalizing board as to valuations of their property they have no ground for alleging in a proceeding under section 1542 Revised Statutes of 1892 that the mode by which the assessor arrived at his valuation renders the assessment void.

The answer does not allege that the officers of the city of Orlando acted fraudulently in making the assessment objected to, nor facts which of themselves clearly show fraud.

The objections made by the answer to Exhibits D & E. of the bill we do not think tenable. At the bottom of each one on the left side, is the name "Louis C. Massey, City Solicitor." If any address is required by the statute this is sufficient.

The defense set up in the answer that the certificates of sale attached to the bill are not liens on the property of the defendant Nannie B. Giles, and that if the city, acquired any rights under them, the same had merged into a title on the 7th of July, 1904 and prior thereto, and that the city should not be allowed to foreclose said certificates, we think is untenable in so far. as these certificates represent the amount of the taxes assessed. We do not think that the appellees are liable for any costs incurred in connection with the making of said sales, for reasons which have been given. But upon questions of the legality of a change in the method of collecting delinquent taxes and of imposing the costs of collection, including solicitor's fees, and of the right of the city to waive the rights given by the sale, the case of League v. Texas, 184 U. S. Sup. Ct. Rep. 156, is squarely in point. It was there held that all these things might be done by statute, without invading any constitutional right of the owner of the land subject to taxation. In fact the statute favors the land owner by giving him further time to pay the taxes, and having been accepted by the city, as this suit shows whatever rights it had under the sales, have been waived.

We are of the opinion that the court below erred in making the order appealed from, and that a decree should have been entered in favor of the city for the amount of the taxes, as assesed, with legal interest and the costs of foreclosure, including a reasonable attorneys'

fee, and referring the case to a master to take testimony upon these matters. Upon the filing of this report, after the expiration of the time provided by the rules, a final decree should be made in favor of the city for the amounts found to be due, containing the usual provisions in a decree of foreclosure.

The order appealed from is reversed with directions for such further proceedings as may be consistent with this opinion.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.